# Kilrow *versus* The Commonwealth.

1. The store of H. was broken open, and a number of cigars stolen therefrom. The defendant was indicted on the charge that he had received the cigars knowing them to have been stolen. P. swore that he, E. and C., committed the larceny. At the trial, to show guilty knowledge, C. testified: "I knew of defendant receiving stolen goods from what I heard him say before the larceny; was at his hotel; was talking with him about receiving stolen goods; we were talking about securing the goods; don't know as I can tell what he did say; he acknowledged that he took them." *Held*, that this testimony was too vague and should not have been received.

2. To establish the fact of guilty knowledge, evidence was admitted tending to show that defendant was personally implicated in three instances where larceny was attempted or committed, and that he took immediate action to conceal certain goods upon information conveyed to him in relation to a fourth: that P. aided in the perpetration of each crime and there was proof that between him and defendant the intercourse was constant and confidential. *Held*, that these transactions were not so remote from each other as to be totally distinct, and it was not error for the court to admit evidence of them as tending to show guilty knowledge in defendant.

3. At the close of the trial defendant proposed to prove by a witness that he purchased a cigar of one of the brands stolen, from the father of P., nearly a year after the larceny; that the father was not in the cigar business, and that the balance of the cigars of P. were kept with his father. The Commonwealth had objected, on the ground that the offer was not rebutting, and the court rejected it. *Held*, that under the facts of the case it should have been received.

4. The court instructed the jury that a conviction on the unsupported testimony of accomplices "would be very unsafe and dangerous," and that they were to inquire whether the Commonwealth had "satisfied them upon the point of the truth of the accomplice's statement," and whether he was "so corroborated upon material parts of his testimony as to give credit to his whole statement," and further that it was "not necessary that an accomplice should be corroborated upon every material part of his testimony, for if this was required a conviction could be had without his testimony at all." *Held*, that these instructions were not erroneous.

[Kilrow v. Commonwealth.]

5. The bill as returned by the grand jury, charged the offence of receiving two thousand cigars of H. and one thousand of E., in a single count. The defendant demurred to the bill on the ground of duplicity, and the court overruled the demurrer and directed the defendant to plead. After the jury was sworn, during the progress of the trial, the indictment was amended by striking out the name of E., and substituting that of H., wherever it occurred. *Held*, that the indictment was bad, and instead of joining in the demurrer, the district attorney should have applied for an order to quash, or for leave to enter a *nolle prosequi.*

Per WOODWARD, J.—The defect, however, is beyond any present reach. The rule seems to be that while duplicity in criminal cases may be objected to by special demurrer or perhaps general demurrer, or be ground for an application to quash the indictment, yet the better view is that it cannot be made the subject of a motion in arrest of judgment, or of a writ of error; and it is cured by a verdict of guilty as to one of the offences, and not guilty as to the other, and by a *nolle prosequi* as to one member of the count. After a verdict of guilty at the trial of the defendant on the amended indictment, it would be hazardous to depart from what is supposed to be the prevailing general rule.

March 20th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error and certiorari to the Court of Quarter Sessions of *Susquehanna county:* Of January Term 1879, Nos. 72 and 73.

Indictment of Thomas Kilrow for receiving stolen goods.

On the night of December 5th 1876, the store of Roscoe T. Handrick, at Lawsville Centre, Susquehanna county, was broken open, and about $40 in money, $15 in postage stamps, and cigars of the value of $78 were stolen. Kilrow was indicted for receiving the cigars knowing them to have been stolen. The only direct evidence against the defendant was the testimony of John Preston, who swore that he, with Frederick Gill and William Chichester, had committed the larceny.

At the trial, before Jessup, P. J., the defendant offered to prove, on cross-examination, by Preston, that while in Canada he was told if he remained there he would get ten years for the offence; if he came back to the United States they would let him off easier; that he came back in part because of this inducement; being offered to show motive and a strong desire to do anything to make his sentence light, and to affect his testimony. Rejected. (1st assignment of error.)

Under objection, Chichester was permitted to testify that "Kilrow had received stolen goods before the burglary on the 5th of December, to show guilty knowledge, purpose and practice." (2d assignment.)

T. D. Estabrook, under objection, testified "that his store was robbed in September 1876; that he tracked the two thieves to Kilrow's; to show guilty knowledge and to corroborate Preston's statement that Kilrow knew there was going to be a search for stolen goods." (3d assignment.)

The court refused to permit defendant to ask this same witness:

8 NORRIS—31

[Kilrow *v.* Commonwealth.]

" If Edward Stack was one of the men he suspected of breaking into his store, and if he did not bring a prosecution against him for this crime, and that Stack came into court, but that he, Estabrook, dropped the prosecution and had a *nolle prosequi* entered." (4th assignment.)

Preston testified, under objection, " that before he, the witness, went to Liberty, in November 1876, with Jewell's horse, he saw Thomas Kilrow; had a talk with him; that Kilrow knew that the witness and Fred. Gill were then going to rob Handrick's store, and that Kilrow agreed to pay the expenses of the trip, if they, Preston and Gill, made anything by the trip; for the purpose of showing guilty knowledge on the part of defendant." (5th assignment.)

Jewell testified, under objection, that he let Preston and Gill have his horse December 1st, to go to Snake Creek, near Handrick's store; for the purpose of corroborating Preston. (6th assignment.)

J. H. Dusenberry testified, under objection, that he " informed Kilrow of the robbery of T. D. Estabrook's store; that the goods had been traced to his house, and that a search-warrant was or would be out; for the purpose of corroborating Preston as to the removal of the Stephens goods from Kilrow's house." (7th assignment.)

The court rejected defendant's offer to prove by Lewis Frink, in rebuttal, " that he purchased of Preston's father a Blue Jay cigar, one of the stolen brands, in October 1877; to be followed by proof that the father was not dealing in cigars, and to be followed by proof that the balance of Preston's cigars were left with his father." (8th assignment.)

In the general charge, the court, inter alia, said:

" An accomplice who comes upon the stand to testify against a receiver of the goods he has stolen, necessarily occupies a position of disrepute, and yet the law makes him a competent witness, and did formerly, before defendants could testify for themselves in criminal cases, as a matter of necessity, for otherwise many guilty persons would escape the just penalty of their crimes, there being, oftentimes, no other sufficient evidence to insure their proper conviction, while their guilty companions are willing, through penitence, or some hope of benefit, to divulge the truth in reference to their secret crime. But from the very character of such witnesses, the law and the courts look with caution upon their testimony; yet, being competent to testify, their credibility is entirely for the jury, and to be judged of as that of any other witness, taking into account their disreputable character and position, and while the jury would be warranted in finding any fact in the cause upon their unsupported testimony if fully credited and believed, yet we must say to you that it would be very unsafe and dangerous for the jury so to do—and this is the opinion of almost all the courts. Is the

[Kilrow v. Commonwealth.]

evidence of Preston and Chichester upon this point of the robbery *corroborated* by the other uncontradicted testimony in the cause? This has been fully argued before you, and upon their testimony and all the other evidence bearing on this point of the case under our instruction you will pass upon this second point." (9th assignment.)

"If the evidence satisfies you of this, then you will pass to the third point. Did the defendant receive these cigars knowing them to have been stolen? The main question on this point is, did he receive them at all? The only evidence, given by the Commonwealth, of receiving, is coupled with a guilty knowledge, and as the counsel for the defendant conceded in their argument before you if you find the defendant received the cigars as testified to by Preston, you will have no difficulty under the same evidence, and the other evidence, in finding guilty knowledge, on his part." (10th assignment.)

"Have the Commonwealth then satisfied you upon this point of the truthfulness of Preston's statement, and is he so corroborated upon material parts of his testimony as to give credit to his whole statement. It is not necessary that an accomplice should be corroborated upon every material part of his testimony, for if this was required a conviction could be had without his testimony at all; but before a conviction should be had upon his evidence in any particular, he should be so corroborated in other material parts of his testimony by uncontradicted evidence as to impress the jury beyond a reasonable doubt of the truthfulness of his entire story.

"When this is the case the law permits the jury to base a conviction upon such testimony. Taking then all the evidence of the Commonwealth which is claimed as corroborating Preston and Chichester, and all the evidence on the part of the defendant which is claimed to contradict and impeach them, are you satisfied with the truthfulness of Preston's entire statement about Kilrow's receiving the stolen cigars and beyond a reasonable doubt arising out of the evidence; if so, then you must also find whether he received them knowing them to have been stolen; but of this, as we said before, you will have but little difficulty." (11th assignment.)

"And if upon such careful and diligent consideration of the evidence you are *satisfied* of the guilt of the defendant beyond a reasonable doubt, *then you should return a verdict of guilty.*" (12th assignment.)

"The law now permits the defendant to testify in his own behalf, but by reason of his great interest in the event of the case his testimony should be received with *great caution* and scrutinized very carefully, for it is almost never the case that a defendant voluntarily goes upon the witness stand to admit his own guilt in the case where he is defending upon a plea of not guilty." (13th assignment.)

[Kilrow *v.* Commonwealth.]

The defendant submitted the following points, to which are appended the answers of the court:

1. That it is always dangerous to convict a defendant on the uncorroborated testimony of an accomplice, and it is the duty of the jury to acquit the defendant in such case.

Ans. "We cannot give you any binding direction as requested in the point. We have already given you the law on this point." (14th assignment.)

3. That the corroboration required in this case must be evidence that goes to show that Thomas Kilrow committed the crime of receiving stolen goods.

Ans. "To this we say that if the evidence of corroboration is such as to impress you with the truthfulness of Preston's entire statement, then it is not absolutely necessary that he should be corroborated as to the connection of the defendant with the receiving." (15th assignment.)

6. The jury should not convict the defendant unless the evidence of the accomplice or accomplices be confirmed, not only as to the circumstances of the crime, but also as to the defendant's connection with the crime charged in the indictment.

Ans. "We decline to give you any binding instructions, as requested in this point." (16th assignment.)

The bill of indictment as returned by the grand jury charged the offences, of receiving two thousand cigars belonging to Roscoe T. Handrick, and one thousand cigars belonging to Thaddeus D. Esterbrook in a single count. The defendant demurred to the bill on the ground of duplicitiy, but the court overruled the demurrer and directed the defendant to plead. (17th assignment of error.)

During the progress of the trial the indictment was amended by striking out the words " Thaddeus D. Estabrook & Son," wherever they occurred and inserting " R. T. Handrick" in their stead. (18th assignment.)

The defendant was convicted, when he took these writs of error and *certiorari*, assigning the errors heretofore noted.

*Littles & Blakeslee*, for plaintiff in error.—We should have been permitted to cross-examine the accomplice to show his motive. Great latitude in such cases is always allowed: 1 Whart. Crim. L. 791. It would have disclosed strong desire to lighten his sentence. It was error to admit evidence of other crimes of receiving from other owners and persons. Worse still, to prove the declaration of Kilrow that he had received other stolen property without alleging when or where, or what the goods were, or to whom they belonged: Coleman *v.* People, 55 N. Y. 81 ; 2 Archibald's Crim. Pract. & Plead. 1436 ; 2 Bennett & Heard's Lead. Crim. Cas. 32 : Regina *v.* Oddy, 2 Dennison C. C. 264 ; Roscoe Crim. Ev. 91 ; 1 Taylor Ev. 355 ; Shindley *v.* State, 23 Ohio 130. There must be distinct

[Kilrow v. Commonwealth.]

proof of the prior receiving else it is not admissible to show guilty knowledge. It was also shown that Gill and Preston attempted to commit a distinct crime, and that Kilrow was accessory to it in order to convict him of the crime of receiving.

Preston was not corroborated in any particular as to the act of receiving. The court erred in saying that accomplices are to be judged of as other witnesses, taking into consideration their disrepute, and if you are satisfied beyond a reasonable doubt it is your duty to convict. On this point see: U. S. v. Smith, 2 Bond 323; U. S. v. Harris, 2 Id. 311; Lee v. State, 21 Ohio St. 151; State v. Litchfield, 58 Maine 267; Childers v. State, 52 Ga. 106; Middletown v. State, Id. 527; 1 Whart. Crim. L. 791, 7 ed.

It was material to show that Preston, who claimed that he sold all the stolen cigars to Kilrow, had some of them in his possession by identifying them in the hands of his father. Two offences were charged in one count. It was bad for duplicity: Commonwealth v. Dibbins, 2 Pars. 380; 1 Bish. Crim. Pract.; Hutchinson v. Commonwealth, 1 Norris 472.

No argument for the Commonwealth.

Mr. Justice WOODWARD delivered the opinion of the court, May 5th 1879.

On the night of the 5th of December 1876, the store of Roscoe T. Handrick at Lawsville Centre, in the county of Susquehanna, was broken open, and about $40 in money, $15 in postage stamps, and cigars of the value of $78, belonging to him were stolen. Kilrow, the defendant below, was indicted, tried and convicted on the charge that he had received the cigars, knowing them to be stolen goods. The only direct and distinct evidence of the defendant's guilt was the testimony of John Preston, who swore that he, with Frederick Gill and William Chichester, had committed the larceny.

Various errors have been assigned to the rulings of the court on questions of evidence, to the answers to the defendant's points, and to portions of the general charge. The first assignment alleges error in the refusal of the offer to prove by Preston, on cross-examination, that while he was in Canada, he was told " that if he remained there, he would get ten years for the offence; that if he came back they would let him off easier; and that he came back in part because of this inducement." While great latitude is allowed in the cross-examination of an accomplice, and the most searching questions are permitted, in order to test his veracity (Lee v. State, 21 Ohio 151), still this testimony was not important enough to warrant a reversal on the ground of its rejection. Preston's position was defined with sufficient clearness. He had been guilty of the original crime. He was in jail. And his motive

[Kilrow *v.* Commonwealth.]

in appearing as a witness against the defendant, in order to secure leniency to himself to himself, was already obvious.

There is more substance in the second error charged to have been committed in permitting William Chichester to testify that Kilrow had received stolen goods before the 5th of December, " to show guilty knowledge, purpose and practice." Chichester's statement on the stand was this : " I know of Kilrow's receiving stolen goods from what I heard defendant say before December 5th 1876. Was at his hotel; was talking with him about receiving of stolen goods ; we were talking about the securing the goods ; don't know as I can tell what he did say ; he acknowledged that he took them." This testimony was too vague to be safe. It contained no detail of time, place or circumstance, and in an issue in which the liberty of a citizen was at stake, it ought not to have been received.

All the points raised by the third, fifth, sixth and seventh assignments are of the same general character. The third is a complaint that T. D. Estabrook was allowed to swear that his store was robbed in September 1876, and that he tracked the two thieves to Kilrow's, the purpose being "to show guilty knowledge, and to corroborate Preston's statement that Kilrow knew there was going to be a search for stolen goods." Standing alone, the admissibility of this witness would have been more than doubtful. Kilrow frankly admitted that the men had been at his house. But the real relation which Estabrook's testimony bore to the cause is discovered by turning to the statements of Preston and Stephens in regard to the robbery of Stephens's goods, and by considering the seventh error in the same connection. The Commonwealth was permitted to show by John H. Dusenberry " that he informed Kilrow of the robbery of Estabrook's store ; that the goods had been traced to his house ; and that a search-warrant was or would be out," for the purpose of " corroborating John Preston as to the removal of the Stephens goods from Kilrow's house." Stephens was postmaster at Great Bend, and his office was broken open and robbed of some paper, pencils, stamps and money about the 1st of September 1876. Preston swore that the stolen paper was first deposited under a board-pile for a week or two ; that it was then taken to Kilrow's ; that it was there when Estabrook's store was robbed ; that Kilrow said there was a search-warrant out, and the witness and Stack must remove the paper ; and that it was taken away by them about twelve o'clock at night. The fifth and sixth assignments are founded on the admission of witnesses to show a previous attempt in November 1876, to rob Handrick's store, the expense of which Kilrow agreed to pay, and to show, in order to corroborate Preston, that Lewis Jewell let Preston and Gill have a horse to go to Snake creek, near the store, and that the horse was taken about half-past six, and brought back between ten and eleven o'clock on the night of the 29th of November. Preston swore that Kilrow

[Kilrow *v.* Commonwealth.]

furnished the money to pay for the use of the horse. It was not asserted at the trial that the defendant ever received the goods of Estabrook, but the fact of the robbery of his store became material when it was interwoven with the facts relating to the robbery of the Stephens property, and the deposit of that in the defendant's house. The Commonwealth was bound to prove guilty knowledge to secure a conviction. It was said in Commonwealth *v.* Charles, 3 Leg. Gaz. 336, that on the trial of an indictment for receiving stolen goods, other acts of receiving, not so far removed in point of time or circumstances from the specific act charged as to constitute a totally distinct transaction, may be given in evidence to establish the fact of guilty knowledge. The text-book rule is somewhat broader. In Whart. Crim. Law, sect. 1889, that rule is stated on the authority of the cases cited to be this: " To show a guilty knowledge, other instances of receiving may be proved, even though they be the subject of other indictments antecedent to the receiving in question." Possibly this statement may be too general, and should perhaps be qualified by the application of the terms of the general rule of the criminal law, that " evidence of some other felony or transaction than that on trial, committed upon or against a different person at a different time, in which the defendant participated, cannot be admitted until proof has been given establishing, or tending to establish, the offence with which he is charged, and showing some connection between the different transactions, or such facts and circumstances as will warrant a presumption that the latter grew out of, and was, to some extent, induced by some circumstances connected with the former:" 2 Russ. on Crimes 777. About the 1st of September 1876, Preston and Edward Stack robbed Stephens's office, and took the goods to Kilrow's house. Later in the same month, they robbed Estabrook's store. When Kilrow was warned that a search-warrant was issued or threatened by Estabrook, he required Preston and Stack to remove Stephens's paper. On the 29th of November, the first attempt to rob Handrick's store was made by Preston and Gill with the knowledge of and at the expense of conveyance by Kilrow. The robbery was accomplished by Preston, Gill and Chichester on the 5th of December 1876. There was an interval of about three months between the first and the final crime. The evidence tended to show that Kilrow was personally implicated in three instances, and that he took immediate action upon information conveyed to him in relation to the fourth. Preston aided in the perpetration of each crime, and there was some proof that the intercourse between him and Kilrow was constant and confidential. It cannot be said that these transactions were so remote from each other as to be totally distinct. The rulings on this branch of the case were right.

In the fourth error complaint is made of the rejection of the offer to prove by Estabrook that he had prosecuted Stack for break-

[Kilrow *v.* Commonwealth.]

ing into his store, and then entered a *nolle prosequi*. The testimony was inconsequent and irrelevant, and was properly rejected.

At the close of the trial, the defendant proposed to prove by Lewis Frink that he purchased a Blue Jay cigar of Mr. Preston, the father of John Preston, in October 1877, to be followed by proof that the father was not in the cigar business, and by proof that the balance of the cigars of John Preston were kept with his father. The offer was rejected on the ground that it was not rebutting, and for this the eighth error was assigned. Courts of original jurisdiction have necessarily large discretion in regulating the order of the admission of evidence, and in permitting or refusing to permit witnesses to be called out of the ordinary course. But it seems that it was hardly a fair exercise of that discretion to refuse to receive this testimony on the ground on which the refusal was based. Of course the facts of a case are not presented in their due perspective in this court, as they are presented to the judge who tries it. Yet this offer was of proof that would appear to be vital and material. And besides, unless the facts are greatly misapprehended, it was technically admissible in the defendant's rebutting case. The Commonwealth had called George Preston as a rebutting witness. He swore that he was in the cigar business in Binghamton; that he never had any cigars with a bird on them; that, in his own words, "in 1876, fall, we sold cigars up to November;" and that he did not know that his father sold cigars in October 1877. There may be some mistake in the record, and it is probable that the view of this court is mistaken, but from all they can gather from the offer, the testimony of Lewis Frink should have been received.

After a consideration of the whole charge, including the answers to the defendant's points, it is believed that the errors specified in the assignments, from the ninth to the sixteenth inclusive, are unfounded. The substance of the instruction to the jury was, that a conviction on the unsupported testimony of accomplices "would be very unsafe and dangerous;" and that they were to inquire whether the Commonwealth had "satisfied them upon the point of the truthfulness of Preston's statement," and whether he was "so corroborated upon material parts of his testimony as to give credit to his whole statement." The court said very properly that it was "not necessary that an accomplice should be corroborated upon every material part of his testimony, for if this were required, a conviction could be had without his testimony at all."

A single inquiry remains. The seventeenth and eighteenth assignments of error relate to the form of the indictment and the judgment of the court on the defendant's demurrer. The bill, as returned by the grand jury, charged the offences of receiving two thousand cigars belonging to Roscoe T. Handrick, and one thousand cigars belonging to Thaddeus D. Estabrook & Son, in a single

[Kilrow *v.* Commonwealth.]

count.   On the 17th of April 1878 the cause was reached.   The defendant demurred to the bill on the ground of duplicity.   The demurrer was overruled, and the defendant directed to plead. The jury were then sworn.   On the following day, while the trial was in progress, the indictment was amended by striking out the words " Thaddeus D. Estabrook & Son," wherever they occurred, and inserting the name of R. T. Handrick in their place.   The indictment was undoubtedly bad.   When the objection to it was made, it could not be known that the bill would not have been found by the grand jury, if the receiving of Handrick's goods only had been charged.   Instead of joining in the demurrer, the district-attorney should have applied for an order to quash, or for leave to enter a *nolle prosequi.*   The defect, however, is beyond any present reach.   The rule seems to be that while duplicity in criminal cases may be objected to by special demurrer, or perhaps general demurrer, or be ground for an application to quash the indictment, yet the better view is that it cannot be made the subject of a motion in arrest of judgment, or of a writ of error ; and it is cured by a verdict of guilty as to one of the offences, and not guilty as to the other, and by a *nolle prosequi* as to one member of the count : Wh. Cr. Law, sec. 395.   Numerous cases are cited in support of the doctrine in the text of the treatise.   After a verdict of guilty at the trial of the defendant on the amended indictment, it would be hazardous to depart from what is supposed to be the prevailing general rule.

> The judgment is reversed upon the writ of error, and it is ordered that the record be remitted, with the opinion of this court, setting forth the causes of reversal, to the Court of Quarter Sessions of the county of Susquehanna, for further proceeding.   The certiorari is dismissed.