**UNITED STATES v. FAWCETT et al.**
(two cases).

Nos. 7396, 7399.

Circuit Court of Appeals, Third Circuit.

Oct. 23, 1940.

Rehearing Denied Dec. 2, 1940.

Samuel C. Sonnenfeld and B. D. Oliensis, both of Philadelphia, Pa., for appellants.

William F. Smith, Acting U. S. Atty., and W. Orvyl Schalick, Asst. U. S. Atty., both of Trenton, N. J., for appellee.

Before JONES, and GOODRICH, Circuit Judges, and GANEY, District Judge.

GANEY, District Judge.

The defendants, Robert Fawcett and Harry Nelson, were indicted on two counts. The first count of the indictment charged that on or about the 10th day of August, 1939 at Bellmawr in the District of New Jersey, the defendants did knowingly, unlawfully and feloniously sell to one Ellis Anderson, with the intention that the same should be uttered, published and passed as true and genuine, forty counterfeit obligations of the United States. The second count charged that, at the same time and place the defendants did possess the same forty counterfeit obligations. The indictment as returned by the Grand Jury of the District of New Jersey on October 10, 1939 charged "Robert Fawcett and Harry Nelson" as above indicated. The indictment was amended by order of court on December 15, 1939, with respect to the name "Harry Nelson", so as to make it read

"Harry Nelson otherwise known as Leo Wilson". On the same day the defendants plead "not guilty", and on the 4th of March, 1940 were tried together. On the following day a verdict of guilty was rendered on both counts as to both defendants. The defendants moved in arrest of judgment and for a new trial, alleging that certain prejudicial errors led to their conviction. Upon denial of these motions, appeal was taken to this court.

The argument most seriously pressed upon us for consideration is that the amendment allowed by the District Court making the addition, "otherwise known as Leo Wilson" is fatally defective. At common law it was beyond question that in the English courts the body of an indictment could not be amended. The reasoning behind this rule was that the finding of a grand jury was upon oath and, depending upon this fact amongst others for its validity, could not be amended by the court or the presiding officer in any manner of substance without the concurrence of the grand jury which presented it; Rex v. Wilkes, 4 Burrow 2527, Hawkins Pleas to the Crown Bk. 2, C. 25, Sec. 97. This doctrine has been followed in the Federal courts and whenever an amendment of substance has been made in the body of an indictment, the courts have been quick to hold it violative of the Fifth Amendment of the Constitution, providing that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury"; Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849; Dodge v. United States, 2 Cir., 258 F. 300; Stewart v. United States, 9 Cir., 12 F.2d 524. This is true even if the defendant agrees that the facts stipulated should have the same effect as if set forth in the indictment, United States v. Norris, 281 U.S. 619, 50 S.Ct. 424, 74 L.Ed. 1076. However, an examination of the cases will show that the prohibition has been directed against amendments to the body of an indictment, and no case has been found where our courts have ruled directly on the question of whether the change in name of the defendant, by the amendment of the indictment to that effect, before plea is entered, and where no question of the identity of the defendant is involved, would be such a substantive change as would be violative of the Fifth Amendment.

In various states, such as New York, Pennsylvania, New Jersey, Virginia, etc., statutes have permitted amendments to indictments which are merely formal, and which in no wise affect or prejudice the rights of the defendant. Statutes providing for the amendment of the name of a defendant are common among states permitting such amendments. These statutes were resorted to in the various states to avoid the delay and inconvenience of the roundabout method of the common law system of criminal procedure. For when a person who was indicted put in a plea of abatement on the ground of misnomer and such a plea was found to be true, the result was that he either had to be discharged or proceedings against him for the alleged crime by the name designated in his plea had to be begun de novo; 1 American Criminal Law, Sec. 537; Hale's P.C. 176, 238.

Congress in all probability motivated by the same desire as the States to relieve against formal technicalities both on the civil and criminal side of the law enacted two remedial statutes.

In 18 U.S.C.A. § 556, it was provided that "no indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant". Likewise in Sec. 269 of the Judicial Code, 28 U. S.C.A. § 391, there is provided "on the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties". These statutes, we think, evidence the intention of Congress to eliminate the effect of all purely technical and formal defects which in no wise prejudice a defendant, or affect his substantial rights, on the theory that, in the progress of the law, narrow formalism should be eliminated and only the attainment of substantial justice sought. In the instant case the defendant raised no objection to the addition "otherwise known as Leo Wilson" at the time the government requested the change of the name in the indictment; no objection was made by the defendant to the change at the time of the entry of his plea of not guilty, and in fact throughout

the whole case no objection was raised by the defendant to this addition, nor was any question ever raised as to the identity of the defendant. The question was only raised and for the first time at the close of all the evidence by a motion in arrest of judgment.

The test as to whether the defendant is prejudiced by an amendment to an indictment has been said to be whether a defense under an indictment as it originally stood would be equally available after the amendment is made, and whether any evidence the defendant might have would be equally applicable to the indictment in the one form as in the other; State v. Moyer, 76 Or. 396, 149 P. 84. As the court says in Lasure v. State, 19 Ohio St. 43, at page 50, "Blackstone (vol. IV, marginal paging 302) thus defines it: 'An indictment is a written accusation of one or more persons of a crime or misdemeanor, preferred to, and presented upon oath by, a grand jury.' An indictment, then, is an accusation of a person of crime. It is an accusation against a person, and not against a name. A name is not of the substance of an indictment. And a person may be well indicted, without the mention of any name, and designating him as a person whose name is to the grand jurors unknown".

Since the defendant was in no wise misled or prejudiced in any degree whatever by the change and no substantive right affected thereby, it is clear that the name by which he was indicted could have nothing to do with the question of his guilt, the character of the offense, the nature or degree of criminality or punishment attached to it, or with the evidence which should be sufficient to warrant conviction. Therefore the change herein made was only one of form and comes within the meaning of the statutes herein referred to. It was properly allowed.

Furthermore, the objection by the defendant to the change of the name in the indictment as raised in his motion in arrest of judgment comes too late. At common law when an indictment assigned to a defendant merely a wrong Christian name or surname, he could only take advantage of the error by a plea in abatement, the burden of proof which was on the defendant. This was equally true of a wrong addition to a name. And so when a prisoner desired to raise any question as to the name under which he was charged in an indictment, he was compelled when called upon to plead, distinctly to raise that question by a plea in abatement, stating his real name. It was a rule upon all pleas in abatement that the one who took advantage of such flaws must at the same time show how they could be corrected. The question thus raised was tried by a jury and if the finding was in favor of the defendant, the indictment was abated; United States v. Howard, Fed.Cas.No.15,-402, 1 Sawyer 507; Commonwealth v. Zinkeris, 79 Pa.Super. 85; 1 Bishop's New Criminal Procedure Sec. 677-2.

While on motions in arrest of judgment, the judgment will be arrested where no indictable offense is set forth; Commonwealth v. Hinds, 101 Mass. 209; where the statute creating the offense has been intermediately repealed, United States v. Goodwin, C.C., 20 F. 237; where the case has been tried by more or less than twelve jurors, State v. Meyers, 68 Mo. 266; it is clear that if a misnomer of the defendant is not met by a plea in abatement, it is too late for objection after trial as failure to plead the misnomer in abatement cures the defect where the plea is not guilty and for the purpose of the case the prisoner has the name given in the indictment; Wharton's Criminal Pleading and Practice, 9th Ed., 761; 3 Wharton's Criminal Law, Sec. 70; 1 Bishop's Criminal Practice 2d 791; Commonwealth v. Butler, 1 Allen, Mass., 4; United States v. De-Quilfeldt, C.C., 5 F. 276; Sherman v. United States, 4 Cir., 80 F.2d 629; Kilrow v. Commonwealth, 89 Pa. 480; United States v. Gale, 109 U.S. 65, 3 S.Ct. 1, 27 L.Ed. 857. Accordingly, if the defendant here wished to raise the question of his being indicted under a wrong name, he should have plead the misnomer by a plea in abatement. His failure to do so and his election to proceed to trial without raising the question bars him from attempting to raise it for the first time by a motion in arrest of judgment.

The second point pressed upon the court for consideration was the alleged error of the trial judge in admitting over objection of counsel the testimony of a witness, Matthew J. Tierney, that the defendant Wilson had purchased merchandise from him in Philadelphia on the night of August 23, 1939 for which Wilson gave him a ten dollar bill, which, according to the testimony of the government witness, was counterfeit and had apparently been printed from the same plates as other counterfeit ten dollar

bills, Exhibits G–1–G–8. Counsel for the defendant Wilson contends that this is a separate and distinct offense and was prejudicial to the defendant.

 It is a general rule of law that a distinct crime unconnected with that laid in the indictment cannot be given in evidence against a prisoner; Shaffner v. Commonwealth, 72 Pa. 60, 13 Am.Rep. 649; Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077. However, there are certain exceptions which allow the proof of other offenses in order to establish the intent or motive of the defendant if one or more of these elements must be proved in order that the guilt of the defendant may be established. The offense here charged is one in which `intent and knowledge are requisite elements of proof, and accordingly the conduct of the defendant at or near the time charged in the indictment is admissible. The intention of a person.charged with a crime can hardly ever be shown by direct evidence and for this reason it is permissible to introduce evidence of other acts of a similar nature; Withaup v. United States, 8 Cir., 127 F. 530; Olson v. United States, 8 Cir., 133 F. 849; Colt v. United States, 8 Cir., 190 F. 305; Samuels v. United States, 8 Cir., 232 F. 536, Ann.Cas. 1917A, 711. Here the act shown by the testimony complained of was connected with the offense charged in the indictment in that there was testimony by the government agent that the counterfeit ten dollar note given to Tierney was made from the same plates from which the counterfeit notes, G–1–G–8, were made. The intent as to other offenses was clearly interwoven in the offense charged and the evidence was admissible. Parker v. United States, 2 Cir., 203 F. 950.

Stress has been laid by counsel on the fact that if the circumstances shown by the government are believed by the jury, to wit: that the defendant sold forty ten dollar bills for $140, this in and of itself shows criminal intent and there was no necessity for showing other acts. However, the fact that the government has shown by a circumstance some evidence of knowledge on the part of the defendant of the act charged, does not preclude it from showing knowledge and intent by other acts. Schultz v. United States, 8 Cir., 200 F. 234; United States v. Brand, 2 Cir., 79 F.2d 605; Means v. United States, 2 Cir., 6 F.2d 975.

The third point urged as error relates to the trial court's instruction to the jury "that Anderson's testimony is corroborated in some small degree". This instruction to the jury was very amply taken care of by the specific instruction of the court to the effect that the testimony of Anderson as an accomplice was to be closely scrutinized, "and viewed with suspicion because it comes from a poluted source". That a jury may convict on the testimony of an accomplice ·alone is not open to doubt. Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann.Cas. 778; United States v. Corso, 7 Cir., 100 F.2d 604. Further, the court, after an exception was taken to the charge concerning the statement that the testimony of Anderson was somewhat corroborated, specifically stated to the jury that, in this connection, they serve as the 'sole. and only triers of the facts and not the court or counsel.

Accordingly, the instructions here were' proper and the rights of the defendant properly protected. Harris v. United States, 2 Cir., 273 F. 785.

The judgment appealed from is affirmed.