**UNITED STATES v. KELLEY.**

No. 10241.

United States Court of Appeals
Seventh Circuit.

Jan. 3, 1951.

Rehearing Denied Jan. 24, 1951.

T. Ernest Maholm, Indianapolis, Ind., for appellant.

Matthew E. Welsh, U. S. Atty., Maurice W. Graston, Asst. U. S. Atty., and Marshall E. Hanley, Asst. U. S. Atty., all of Indianapolis, Ind., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

This is an appeal from a judgment entered upon a jury verdict convicting the defendant of all of the three counts of an indictment charging him with (1) passing and uttering a certain counterfeit $10 Federal Reserve Note, (2) possessing twenty-nine counterfeit $10 Federal Reserve Notes, and (3) receiving the same thirty counterfeit $10 Federal Reserve Notes, in violation of 18 U.S.C.A. §§ 472 and 473.

The defendant contends that error was committed by the district court in denying the motion for a continuance, to provide for additional time within which to prepare the defense, and further in failing to grant defendant's motion for a judgment of acquittal, because the evidence was in-

sufficient to prove that the counterfeit notes were passed, uttered, possessed, or received by the defendant with the necessary intent on his part to defraud, and with the requisite knowledge on his part that they were counterfeited.

■ The district court directed the sentence imposed upon Count 1 and upon Count 2 to be served consecutively. Under the circumstances of this case we think the sentence was rather severe, but as the combined sentence on Counts 1 and 2 was within the statutory limit which might have been imposed on either count, there is no error in this respect. United States v. Sorcey, 7 Cir., 151 F.2d 899, 902.

As this is a case where the defendant's guilt has not been overwhelmingly established, Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314, and recognizing that the question of the defendant's knowledge and intent is of critical importance, we have carefully read all of the testimony as appeared in the typewritten transcript. However, before considering the case on the merits we turn to the defendant's contention that it was prejudicial error for the court to deny his counsel's motion for a continuance.

■ Defendant argues that he was deprived of his rights under Amend. VI, U.S. Const., to have counsel assist him in his defense, contending that the right to counsel carries with it the right that counsel have adequate time in which to prepare the defense, citing Powell, et al. v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158.

The facts are that the defendant was arrested in the early morning of October 26, 1949. On that same day, accompanied by his personal attorney, he appeared before the U.S. Commissioner. On November 21, 1949, he posted bond in the sum of $7,000 and was at liberty on bail from that day until the day of trial. The grand jury returned the indictment on March 20, 1950. Four days later defendant was arraigned and when defendant informed the court that his attorney could not be present, the court appointed counsel to appear for him at the arraignment. Defendant entered a plea of not guilty and the trial date was set for May 26, 1950, the court informing the defendant that it would be necessary for him to be ready for trial on that day. On April 28, 1950, the trial judge, on his own motion, reset the trial date for June 20, 1950. On June 15, 1950, defendant's present counsel, who had shortly theretofore been retained, filed a notice of appearance and requested the district court to grant the defendant a short continuance, saying that he knew nothing about the facts and that five days was an insufficient period to prepare the defense properly. The court refused to grant the continuance and the trial commenced on June 20.

Considering the length of time elapsing between the date of arrest and also the date of arraignment and the date of the trial, we do not think defendant's constitutional rights were violated nor that the denial of the requested continuance was an abuse of the court's discretion. United States v. Cook, 7 Cir., 184 F.2d 642; Gaudio v. United States, 4 Cir., 179 F.2d 300. We think that the defendant had a fair trial. Although he did not personally testify, several witnesses appeared in his behalf on the merits of the case, as well as three character witnesses. Defendant's counsel showed skill in his cross-examination of the government witnesses and ably represented the defendant. We hold that the refusal of the request for a continuance was not error.

■ Defendant insists that the evidence was not sufficient to support the judgment of conviction, especially as to scienter, and points out that the burden was on the government to prove beyond a reasonable doubt that the counterfeit notes were passed or possessed with intent to defraud and with knowledge that they were counterfeited. Defendant relies heavily upon United States v. Litberg, 7 Cir., 175 F.2d 20, a counterfeiting case, where this court reversed the conviction. But in that case we stated, 175 F.2d at page 21 the well established rule, as follows:

" * * * we must keep in mind the oft repeated rule that the weight and credibility to be attached to testimony of the witnesses is a matter for the trier of

the facts and that we are required to take that view of the evidence most favorable to the government. * * *

     *     *     *     *     *     *

"* * * we must accept the proof most favorable to the government's theory, even though some of it is of doubtful validity and open to serious dispute. * * *"

The charges in the indictment are based upon certain of the defendant's acts at the Sportland Tavern at Indianapolis, where during the late hours of October 25, 1949, and some short space of time thereafter, he and one Aiken, both apparently men of middle age, visited after a drinking tour of several other Indianapolis taverns. Defendant's truck had been their means of transportation from tavern to tavern. Defendant and Aiken, who had been acquaintances of 20 years standing, met that day at some tavern about 3:30 P.M. After half an hour they went to another tavern where they stayed about an hour. They then went to Aiken's home where Aiken procured $300, to wit, fifteen $20 bills. Aiken loaned defendant an undetermined amount between $35 and $50. After visiting three more taverns they arrived at the Sportland Tavern about 9:30 P.M. Although then somewhat under the influence of liquor, they continued drinking. They also played shuffleboard. In these activities they were joined by several men and women among the twenty-five to thirty patrons present. Defendant and Aiken had two tables placed together. Minnie Vitone, waitress, waited upon them.[1] Lying loose and exposed on the tables used by the defendant and Aiken was about $185 in bills and other currency which Aiken testified belonged to him and represented the balance of his $300, less spendings therefrom and the amount he loaned defendant.

Cecil Witham, who served as bartender at the Sportland Tavern on the night in question, testified that after the defendant and Aiken had arrived, waitress Vitone turned over three $10 bills to him as proceeds of sales of drinks, and that he noted at the time each had the same serial number, occasioning him to conclude that they were counterfeited. He further testified that he showed the three bills to Mike Vitone and William Gibbs, who, testifying in turn, stated that the three bills shown to them by Witham had the same serial number. Mike Vitone, at Witham's request, put in a telephone call for police assistance.

Witham further testified that shortly after Vitone made the telephone call the defendant approached the bar and spoke to him, saying that he (Witham) was going to be "short" because the waitress had mistakenly given him too much change, in the amount of about $5, and offered to pay same; that he informed the defendant that the waitress had given him a $10 bill; that he did not take the money offered by defendant and said nothing further to him on the subject; that the defendant, after stating that he wished to purchase a fifth of whiskey, purchased two pints of whiskey from him costing $5.60, which the defendant paid for with a $10 bill and, besides the merchandise, Witham delivered to defendant $4.40 in change. The defendant's purchase of the two pints of whiskey was witnessed and corroborated by Gibbs and Mike Vitone. A witness for the defendant, Lonnie Kieth, one of the musicians playing in the orchestra at the tavern that evening, testified that the defendant gave him a pint of whiskey.

Witham testified that after receiving the $10 bill from defendant, he placed it underneath the bar, and that he did not compare it until later with the three $10 bills having the same serial number which he had received earlier in the evening through waitress Vitone. The delay, he testified, was occasioned by the arrival of police officers Lotz and Whobray, who arrived about midnight, and the events which rapidly took place immediately thereafter. The doors were locked upon their arrival, and when officer Gorton appeared a few minutes later he was let in by officer Lotz.

---

1. Minnie Vitone died before the trial. Her husband, Mike, who was present at the Sportland Tavern at the time the offenses were committed, testified for the government.

Testimony revealed that upon the entry of officers Lotz and Whobray, the defendant went into the men's rest room located along the east wall of the tavern premises. Gibbs testified that at that time he went into the rest room and first saw the defendant with $10 bills in one hand, and within one or two minutes saw him counting $5 and $1 bills. Another patron of the tavern, Harold Keckhaver, then entered the rest room along with Mike Vitone. They testified they saw the defendant put a roll of green about 2½" in diameter (according to Keckhaver) into the water tank of the toilet in the rest room; that Keckhaver took this roll from the water tank within two or three minutes after it had been put there by the defendant; that the roll consisted of $10 bills; and that Keckhaver, immediately upon leaving the rest room and just outside its entrance door, met officer Gorton and turned over the roll to him. Officer Gorton testified that on receiving the still wet roll from Keckhaver he sought out and delivered it to officer Lotz, then in the act of telephoning police headquarters to enlist the assistance of the detail assigned to counterfeiting violations.

In the meantime Aiken engaged in a fist fight with officer Whobray. He was subdued and placed under arrest. About the same time the defendant was also engaged in disorderly conduct just outside the rest room, and was placed under arrest by officer Gorton. Both the defendant and Aiken were taken to police headquarters and detained.

At headquarters officers Lotz and Whobray met Raymond A. Horton, then the supervising agent of the U. S. Secret Service in the Indianapolis area, at about 2:30 A.M. of October 26. Officer Lotz at that time turned over to Agent Horton the roll of $10 bills found by Keckhaver in the water tank of the toilet in the men's rest room of the Sportland Tavern. Mrs. Vitone and Witham were at headquarters at the time, and all returned to the Sportland Tavern to proceed with an investigation under Agent Horton. At the tavern Witham picked up from under the bar and turned over to Agent Horton the $10 bill he had received from the defendant in connection with his purchase of two pints of whiskey just before midnight on October 25.

The uncontradicted testimony of Agent Horton established that all of the thirty $10 bills referred to in the indictment, consisting of the single $10 bill passed by the defendant to Witham for the two pints of whiskey and the twenty-nine $10 bills found by Keckhaver in the water tank of the toilet at the Sportland Tavern, were counterfeited.

■■■ This outline of the testimony shows substantial support of the charges of possession of the twenty-nine $10 notes and the passing and uttering of one $10 note. True, evidence that the defendant received the counterfeit bills from any particular source was not introduced, but the very fact of possession gives rise to an inference that he received them from someone, unless of course he made them entirely himself. However, the sentence imposed on the third count was concurrent with the sentence imposed on Count 1; therefore any insufficiency of evidence to support Count 3 did not prejudice defendant. United States v. Perplies, 7 Cir., 165 F.2d 874, 877; United States v. Williams, 7 Cir., 175 F.2d 715, 716.

■■■ We agree with defendant's contention that proof of intent by defendant to defraud and knowledge on his part that the notes were counterfeited is essential to his conviction. United States v. Carll, 105 U.S. 611, 613, 26 L.Ed. 1135. We agree also that the mere passing of the $10 counterfeit note, standing alone, is not sufficient to show such knowledge and intent under Count 1 of the indictment. United States v. Litberg, supra, 175 F.2d at page 23.

■■■ The question of guilty knowledge, and especially the intent to defraud, can rarely be shown by direct evidence; therefore it is well established that such elements may be shown by other than direct evidence. United States v. Platt, 7 Cir., 156 F.2d 326, 327. The jury may scrutinize the entire conduct of the defendant at or near the time when the offenses are alleged to have been committed. United States v. Fawcett, et al., 3 Cir., 115 F.2d 764, 768,

132 A.L.R. 404. Other acts of a similar nature may be shown to prove fraudulent intent. Withaup v. United States, 8 Cir., 127 F. 530; Samuels v. United States, 8 Cir., 232 F. 536.

As an illustration of the wide range of evidence which is admissible to show the intent of a defendant charged with counterfeiting, the Court of Appeals for the Second Circuit said in the recent case of United States v. Corry, 183 F.2d 155, 157:

"Criticism it also made of the admission of evidence tending to prove that the defendant became interested in counterfeiting in 1945, some three years before the incident in suit. This evidence was competent as bearing on the intent of the defendant, if shown to have been in the possession of counterfeit money. It is argued that the evidence is too remote in time to furnish any proof of intent that would attach to occurrences so long afterwards. The testimony certainly was some indication of intent to defraud by the use of counterfeit money, and its admissibility was a matter fully within the discretion of the trial judge. II Wigmore, § 316(2)."

In II Wigmore, Sec. 313(2), there is quoted with approval the following from Farrer v. State, 2 Ohio St. 54, 73: "* * The best evidence of this scienter * * is proof that the accused had more spurious money in his possession than would be likely to come into the hands of an honest man in the ordinary course of business."

There is no question but that the counterfeit $10 note which defendant used to purchase the two bottles of whiskey was part of the same lot of counterfeit $10 notes as the other twenty-nine which he placed in the toilet tank in the rest room. They all had the same serial number and were otherwise similar in appearance. The jury had the right to infer guilty knowledge by defendant that the thirty bills he had had were counterfeited, from his act of concealing or trying to dispose of the twenty-nine notes still in his possession when the police locked the doors and commenced their investigation. Such action also was significant on the question of defendant's intent in using the counterfeit $10

note to purchase the whiskey. We think the jury was justified in finding that requisite knowledge that the notes were counterfeited and intent to defraud existed on defendant's part, and in this, and all other respects, its verdict was proper. The verdict cannot be disturbed. Therefore we hold that the district judge did not err in denying defendant's motion for a judgment of acquittal.

Judgment affirmed.