**UNITED STATES v. McKAY.**

No. 25947.

District Court, E. D. Michigan, S. D.

July 18, 1942.

Nash Adams and Alfred Teton, both of Washington, D. C., for plaintiff.

Eugene L. Garey, of New York City (William R. Rawick, of New York City, of counsel), for defendant.

MILLER, District Judge.

This matter is before me on the defendant's demurrer to the indictment and his motion for a bill of particulars.

The indictment, consisting of two counts, charges the defendant with violations of Section 215 of the Criminal Code, 18 U.S.C.A. § 338, commonly referred to as the Mail Fraud Statute. It alleges in substance that on November 8, 1938, Frank D. Fitzgerald was elected Governer of the State of Michigan; that in both his primary and general election campaigns the major part of the advertising in his behalf was handled and directed by Bass-Luckoff, Inc., a Michigan corporation engaged in the advertising business in Detroit; that on and prior to November 8, 1938, Bass-Luckoff, Inc., had been fully paid for all services rendered and expenditures made by it with respect to both the primary and general election campaigns; that beginning in October, 1938, and continuously thereafter until February, 1939, the defendant Frank D. McKay and one Clarence E. Larson, since deceased, did feloniously devise and intend to devise a scheme and artifice to defraud and for obtaining money by means of false and fraudulent pretenses from Edsel B. Ford by the following means:

(a) By falsely representing that certain political organizations were then heavily indebted to Bass-Luckoff, Inc., for services rendered and amounts expended for campaign advertising in behalf of Fitzgerald, and that moneys obtained from contributors would be used to pay this outstanding indebtedness; where in truth and in fact as the defendant knew said representations were false and fraudulent in that there was at that time no such outstanding indebtedness and that any moneys so obtained from contributors were to be and were actually paid over surreptitiously to the defendant McKay for his own personal use;

(b) that after Bass-Luckoff, Inc., had been paid in full for all amounts owing to it for services rendered and sums expended in connection with said campaigns the defendant would and did cause to be placed on forms bearing the name Bass-Luckoff, Inc., certain invoices purporting to show sums of money then due and owing to Bass-Luckoff, Inc., for services rendered and expenditures made for campaign advertising in behalf of Fitzgerald, and did cause these invoices to be presented to contributors in the false and fraudulent guise of unpaid bills for the purpose of inducing the contributors to pay sums of money to Bass-Luckoff, Inc., in the belief that they were helping to pay off a political indebtedness owing to Bass-Luckoff, Inc.; that Bass-Luckoff, Inc., did not retain the money so paid by contributors but surreptitiously paid it over to defendant McKay for his own personal use:

(c) That the defendant McKay communicated with Harry H. Bennett and requested him to obtain from Edsel B. Ford a contribution towards the expenses of Fitzgerald's campaigns and for the payment of debts allegedly due to Bass-Luckoff, Inc., and presented to Bennett certain of the invoices marked to show indebtedness to Bass-Luckoff, Inc., and represented as being unpaid expenses of the gubernatorial campaigns, whereas in truth and in fact as the defendant knew the amounts represented items of expense previously paid and were false documents prepared for the use in the execution of the scheme described.

The first count then alleges that on or about November 26, 1938, the defendant did cause the United States mails to be used for the purpose of executing said scheme and artifice, specifically referring to and relying upon the mailing by the Union Bank of Michigan of Grand Rapids, Michigan, to the National Bank of Detroit, at Detroit, Michigan, of a cashier's check of the Detroit

Bank of Detroit, Michigan, dated November 18, 1938, in the amount of $5,000 payable to the order of Frank McKay and endorsed by him. The second count charges the same scheme and artifice to defraud and then alleges that on or about the 1st of December, 1938, the defendant caused the United States mails to be used for the purpose of executing said scheme and artifice to defraud, specifically referring to and relying upon a mailing by the Union Bank of Michigan at Grand Rapids, Michigan, to the National Bank of Detroit, at Detroit, Michigan, of a check of Bass-Luckoff, Inc., drawn on the Detroit Bank of Detroit, Michigan, in the amount of $3,068 payable to the order of cash and endorsed by McKay. Photostatic copies of the two checks together with the endorsements on the reverse sides thereof are made parts of the respective counts of the indictments.

■■■ The motion for a bill of particulars consists of 15 separate requests, set out in separately numbered paragraphs. The purpose of a bill of particulars is largely to advise the defendant of what facts, more or less in detail, he will be required to meet. Thereafter in the trial of the case the Court will limit the Government in its evidence to those facts set forth in the bill of particulars. United States v. Adams Express Co., D.C., 119 F. 240; Kettenbach v. United States, 9 Cir., 202 F. 377, 383. Where the charges in the indictment are so general that they do not advise the defendant of the specific acts with which he is charged, it is proper for the Court upon motion by the defendant to order the filing of a bill of particulars, but it is not the purpose of such procedure to compel the Government to disclose in detail the evidence upon which it expects to rely. The application is one which is addressed to the discretion of the trial court, which should keep in mind and balance one against the other both the fact that the defendant is entitled to enough detail to enable him to meet the charges and prepare for trial and the fact that the Government should not be unduly limited in the scope and presentation of its evidence offered at the trial in support of the offense charged in the indictment. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545. In the present case the allegations of the indictment are rather full and complete with references to the nature and scope of the alleged scheme to defraud and state specifically the use of the mails relied upon in each count. Most of the 15 requests call for details of evidence and in the opinion of the Court should be denied. The oral argument upon the demurrer showed, however, that as a practical matter it was advisable to have the Government state more definitely the details involved in the passage of the money from Edsel B. Ford through various channels until it came into the possession of the defendant McKay. These details are matters of documentary evidence and show facts which are apparently agreed upon by both counsel for the Government and for the defendant. Accordingly, the Government can not be prejudiced in any way by being required to state the facts in this particular phase of the case upon which it will rely, and such undisputed facts may as a practical matter materially aid in promptly disposing of this indictment. Accordingly, the Court overrules defendant's requests 1 through 9 inclusive and sustains his requests 10 through 15 inclusive, all as set out in his motion for a bill of particulars.

■■■ The Court indicated to counsel at the close of the oral argument its views as above set out and Government counsel has accordingly tendered its bill of particulars complying with this ruling. The Government contends, however, that the bill of particulars forms no part of the indictment and can not be considered by the Court in ruling upon the demurrer heretofore filed to the indictment itself. This position is technically sound. United States v. Comyns, 248 U.S. 349, 39 S.Ct. 98, 63 L.Ed. 287; United States v. Norris, 281 U.S. 619, 50 S.Ct. 424, 74 L.Ed. 1076; United States v. Fawcett, 3 Cir., 115 F.2d 764, 766, 132 A.L.R. 404; United States v. Rintelen, D.C., 233 F. 793, 799; United States v. Reisley, D.C., 32 F.Supp. 432, 434. But as a practical matter such a rule under circumstances as they exist in this case serves no useful purpose. On the contrary, it impedes and delays the administration of justice. Because if the uncontroverted facts upon which the Government relies do not constitute the crime charged by the indictment there is no good purpose served in causing both the Government and defendant to make extensive and expensive trial preparations, to impanel a jury, to spend several weeks in hearing many witnesses, some no doubt from distant points, and then being compelled to direct a verdict for the defendant because the facts proven, and already conceded by the defendant to be the facts, do not constitute

the offense charged. See United States v. Adams Express Co., supra, 119 F. 240, 241. Accordingly, as a practical matter it seems advisable for the Court to rule on the demurrer to the indictment without considering the bill of particulars, and in case that ruling should be erroneous, considering the language of the indictment instead of the actual facts, to also indicate its present views based on the facts as set out in the bill of particulars.

■ It is well settled that under Section 215 of the Criminal Code it is not sufficient to merely allege and show that the defendant devised a scheme or artifice to defraud. The statute specifically provides that the United States mail must be used "for the purpose of executing such scheme or artifice or attempting so to do." It is vital to the commission of the offense that the use of the mail relied upon by the Government be in furtherance of the alleged scheme. The demurrer to the indictment attacks its validity on the ground that the indictment shows on its face that the use of the mails relied upon by the Government in each count was not for the purpose of executing the scheme or artifice charged, but on the contrary occurred after the completion of the alleged scheme and at a time when the fraud, if any existed, had been fully perpetrated. Defendant relies upon the well settled rule that the mailing of a letter or check, even though connected with or relating to a scheme to defraud, if not for the purpose of executing the scheme, will not support an indictment under the statute. If the scheme charged was completed before the mail was used the offense denounced by Section 215 of the Criminal Code does not exist. Stapp et al. v. United States, 5 Cir., 120 F.2d 898; Spillers v. United States, 5 Cir., 47 F.2d 893; Dyhre v. Hudspeth, 10 Cir., 106 F.2d 286; McNear v. United States, 10 Cir., 60 F.2d 861; McLendon v. United States, 6 Cir., 2 F.2d 660; United States v. Dale, D.C., 230 F. 750; United States v. Leche, D.C., 34 F.Supp. 982, 986; United States v. Siebricht, 2 Cir., 59 F.2d 976; Mitchell v. United States, 10 Cir., 118 F.2d 653.

■ The scheme charged in the indictment was one to defraud Edsel B. Ford. Count 1 relies upon the mailing on November 26, 1938, of a cashier's check for $5,000 dated November 18, 1938, payable to Frank McKay and endorsed by him. This is obviously the proceeds of the alleged fraudulent scheme; it is equally obvious that it

is not the check of the victim. It follows that any money obtained from the victim by means of any fraudulent scheme had been obtained and was a completed transaction when the cashier's check was issued by the Detroit Bank on November 18, 1938, and when the mailing of the cashier's check in question took place eight days later on November 26, 1938. At that time the victim had parted with his money without power to retract.

In Count 2 the Government relies upon the mailing of a check issued by Bass-Luckoff, Inc., for $3,068 dated November 29, 1938, payable to the order of cash and endorsed by Frank McKay. This check is also obviously not the check of the victim, although representing the proceeds of the alleged scheme. When it was issued on November 29, 1938, the fraud upon Ford, if any existed, had already been completed. Bass-Luckoff, Inc., had already obtained the money from the victim before issuing its own check. The mailing of the Bass-Luckoff check on December 1, 1938, was not for the purpose of defrauding the victim.

■ Even if the foregoing analysis of the situation, as derived from the allegations of the indictment and the exhibits made a part thereof, is not correct there are nevertheless additional facts which support the defendant's contention. In Count 1 the cashier's check of the Detroit Bank of Detroit, Michigan, carries on its reverse side two separate stamps of the Union Bank of Michigan, of Grand Rapids, Michigan, which bank the indictment charges mailed the check in question from Grand Rapids to Detriot. One stamp carries the letters "P.T." while the other stamp is the usual stamp endorsing the check for collection through usual banking channels. In Count 2 the Bass-Luckoff, Inc. check likewise carries on its reverse side two separate stamps of the Union Bank of Michigan one carrying the letters "P.T." and the other being the usual endorsement of the bank for collection through banking channels. Defendant claims that the Court can take judicial notice that in each instance the stamp of the bank carrying the letters "P.T." means that it was cashed by the bank's paying teller, and that after being so cashed the other stamp is the act of the bank in putting it through for collection to reimburse itself for the money so paid out. See 20 American Jurisprudence, page 91, Section 69; Belford v.

Beatty, 145 Ill. 414, 34 N.E. 254; United States v. Heinze, C.C., 161 F. 425, 427; Potter v. United States, 155 U.S. 438, 444, 15 S.Ct. 144, 39 L.Ed. 214; Farmers, etc., Bank v. Butchers & Drovers' Bank, 28 N.Y. 425; Towler v. Carithers, 4 Ga.App. 517, 61 S.E. 1132; State v. Mullin, 78 Ohio St. 358, 85 N.E. 556, 18 L.R.A.,N.S., 609, 125 Am.St.Rep. 710; In re Charles T. Stork & Co., 2 Cir., 271 F. 279. It is apparent that such an interpretation by the Court under the doctrine of judicial notice would be in accord with the undisputed facts in the case, since the bill of particulars filed by the Government states that both the cashier's check and the Bass-Luckoff check were cashed by the defendant McKay at the Union Bank of Michigan in Grand Rapids, which bank thereafter forwarded them for collection to the National Bank of Detroit. The Court will accordingly take such judicial notice of the bank stamps referred to and accept it .as being shown by the indictment that the checks were cashed by the defendant McKay instead of being deposited by him for credit to his account. Under the authorities above referred to, and with particular reliance upon the recent decision of the Circuit Court of Appeals for the 5th Circuit in Stapp v. United States, supra, the Court holds that the subsequent mailing of the check by the bank in question in order to reimburse itself for the funds it had paid out does not constitute a mailing in furtherance of the scheme charged in the indictment, and that the demurrers to the two counts of the indictment should be sustained.

In relying upon and following the decision in the case of United States v. Stapp, supra, the Court is not unmindful of the earlier ruling of the same Court in Hart v. United States, 112 F.2d 128, 131, which apparently is in conflict with its later ruling in the Stapp case. But the apparent conflict does not really exist when the opinion in the Hart case is carefully considered. It expressly recognized the rule that a use of the mail after the fraud was complete fails to bring the case within the statute, but held that the scheme to defraud in that case "was not at an end when Hart indorsed and presented the check to the bank for no one had yet been defrauded." Its ruling was expressly based upon its interpretation of the law as applied to the facts before it, which, whether it was correct or incorrect, was that the drawer of the check "might have intervened to stop payment and the

fraudulent scheme would have been frustrated." In both the Stapp case and the present case, it was beyond the power of the victim to intervene and stop payment on the check which was the subject of the mailing, first, because it was not the victim's check, and second, because after it was cashed by the bank the bank became a holder in due course whose rights against the drawer of the check could not be thus defeated.

It may be contended by the Government that the foregoing ruling is based upon facts not disclosed by the allegations of the indictment or from any reasonable construction of them. Such a contention is not in the Court's opinion well founded, but even if it should be well taken the final disposition of this case upon its subsequent trial would be the same. The bill of particulars filed by the Government states with reference to Count 1 that on November 18, 1938, Edsel B. Ford and Harry Bennett caused to be purchased from the Manufacture's National Bank a cashier's check for $5,000 payable to Bass-Luckoff, Inc.; that this check was deposited in the special account of Bass-Luckoff in the Detroit Bank; that on the same day Bass-Luckoff used the proceeds of this deposit to buy from the Detroit Bank a cashier's check of $5,000 payable to Frank D. McKay, which check was delivered to McKay who cashed it at the Union Bank of Michigan in Grand Rapids; that the Union Bank transmitted the cashier's check for collection to the National Bank of Detroit by first-class United States mail. With reference to Count 2 of the indictment the bill of particulars states that on November 25, 1938, Harry Bennett and Edsel B. Ford caused to be bought at the Manufacture's National Bank a cashier's check for $4,918 payable to Bass-Luckoff, Inc.; that this check was deposited in a special account of Bass-Luckoff in the Detroit Bank; that on November 25, 1938, a check for $3,068 payable to Frank D. McKay was issued against the special account and sent directly to McKay; that McKay cashed this check at the Union Bank of Michigan which transmitted it for collection to the National Bank of Detroit by first-class United States mail. The facts so stated include the facts considered by the Court as being shown by the indictment and the exhibits made a part thereof. In presenting its case to the jury the Government would be compelled to prove those facts to support the charge that the mails

were used in furtherance of the alleged scheme. Accordingly, at the close of the Government's case this Court would, following the principles hereinabove announced as being applicable to such facts, sustain the defendant's motion for a directed verdict. If the Court's application of the law to the facts is correct, no useful purpose would be served in proceeding with the trial of this indictment.

The defendant's demurrer to each count of the indictment is sustained and it is ordered that the indictment be dismissed.