STATE OF NEW JERSEY, PLAINTIFF, v. JOSEPH LA FERA, SR., WILBUR W. BLAUVELT, RICHARD N. DINALLO, ANTHONY P. MIELE, AND PHILLIP R. SALVATORE, DEFENDANTS.

Superior Court of New Jersey
Law Division—Criminal

Decided May 19, 1960.

490

*Mr. John J. Bergin,* Deputy Attorney General, attorney for the State.

*Mr. William A. Wachenfeld,* attorney for defendant Joseph La Fera, Sr.

*Mr. John J. Breslin,* attorney for defendant Wilbur W. Blauvelt.

*Messrs. Van Riper & Belmont,* attorneys for defendant Richard N. Dinallo.

*Mr. John W. McGeehan, Jr.,* attorney for defendant Anthony P. Miele.

*Mr. Albert G. Besser,* attorney for defendant Phillip R. Salvatore.

WAUGH, A. J. S. C. The five named defendants move to dismiss both counts of indictment No. 85. Each count charges a conspiracy. Count one charges a conspiracy contrary to *N. J. S.* 2A:98–1(h) to prevent the due administration of the laws of New Jersey, namely *N. J. S. A.* 58:14–22, which latter is a public bidding statute covering contracts to be let by the Passaic Valley Sewerage Commissioners, a body politic and corporate (see *N. J. S. A.* 58:14–2). Count two charges a conspiracy contrary to *N. J. S.* 2A:98–1(f) to obtain money by false pretenses from the Passaic Valley Sewerage Commissioners.

Since the actual conspiracy alleged in each count is short, it will be helpful to set each forth in full.

### COUNT I.

"Joseph La Fera, Sr., Wilbur W. Blauvelt, Richard N. Dinallo, Anthony P. Miele and Phillip R. Salvatore, on divers days beginning on or about the 29th day of November 1954 and ending on or about the 10th day of September 1956, did commit the crime of conspiracy in that they unlawfully and corruptly did conspire, combine, confederate and agree together to pervert and obstruct the due administration of the laws of the State of New Jersey, namely, *N. J. S.* 58:14–22, with respect to the awarding by the Passaic Valley Sewerage Commissioners of a certain contract, to wit, Contract 355, Newark Bay Sedimentation Basin Improvements and Sludge Handling Facilities, by agreeing in advance of bidding on said contract which companies represented by them would bid on said contract, and in what amounts."

### COUNT II.

"Joseph LaFera, Sr., Wilbur W. Blauvelt, Richard N. Dinallo, Anthony P. Miele and Phillip R. Salvatore, on divers days beginning

on or about the 29th day of November 1954 and ending on or about the 10th day of September 1956, did commit the crime of conspiracy in that they unlawfully and corruptly did conspire, combine, confederate and agree together to obtain money by false pretenses from the Passaic Valley Sewerage Commissioners by willfully and knowingly falsely pretending to the Passaic Valley Sewerage Commissioners that certain bids submitted on September 10, 1956 on a certain contract, to wit, Contract 355, Newark Bay Sedimentation Basin Improvements and Sludge Handling Facilities, by Geo. M. Brewster & Son, Inc. and Terminal Construction Corp. were competitive bids, knowing such bids were not in fact competitive bids, but were the result of Joseph La Fera, Sr., Wilbur W. Blauvelt, Anthony P. Miele and Phillip R. Salvatore agreeing in advance of the submission of such bids which company or companies represented by them would bid on such contract, and in what amounts."

It is noted here and more will be said later about the fact that in Count II, while named as one of the conspirators, Richard N. Dinallo is not alleged to have agreed with the other four defendants "in advance of the submission of such bids which company or companies represented by them would bid on such contract and in what amounts."

Each count of the conspiracy indictment is followed by the allegation of eight overt acts, identical as to each count.

At the outset it is well to note that the State concedes it can prove only one conspiracy—not two. In other words, that the indictment splits a single conspiracy into two counts is conceded.

For reasons which are not apparent to the court, the indictments are couched in most terse terms. This may have been done by choice or because, as was suggested by the State at oral argument, the State has little direct proof of the conspiracy and depends mainly upon circumstantial evidence.

██ If terseness is from choice, it would seem inadvisable despite the outcome of this motion. Courts should not have to search out jurisdiction. Jurisdiction and the facts supporting it should be clearly alleged. One conspiracy should not be split into two. The law is clear that one conspiracy may have several objectives. The law books and court files are filled with conspiracy indictments which have withstood

preliminary motions and appeals after judgments of conviction. In civil cases, Justice Burling (then a Circuit Judge) said: "It is hornbook admonition that where statutory procedure is being followed, it is advisable to hew to the line and not attempt debatable authority"; and Chief Justice Vanderbilt said: "The new rules should not deceive one into believing that the essentials of sound pleading at law or in equity have been abandoned." These caveats apply equally and probably with more force to the criminal law, especially to indictments. *State v. Lefante*, 12 *N. J.* 505 (1953), cited by the State, is not to the contrary.

But the court is called upon here to determine

(1) Whether or not the two counts, terse as they are,
 (a) state the essential elements of a conspiracy under *N. J. S.* 2A:98–1(*h*) and (*f*) so as to comply with *Art.* I, *par.* 10 of our 1947 *Constitution*, and *R. R.* 3:4–3;
 (b) state jurisdiction sufficiently; and
(2) If the admitted splitting of the conspiracy is fatal to the indictment, or whether the State may amend so as to charge one conspiracy with two objects, or proceed only on one count of the indictment.

In determining these questions the court finds the following cases controlling: *State v. Winne*, 12 *N. J.* 152, at *page* 177 (1953):

"Our State Constitution guarantees that 'No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury,' *Art.* I, *par.* 8. Our rules of court provide that 'The indictment or accusation shall be a written statement of the essential facts constituting the offense charged.' *Rule* 2:4–11(*a*). The purpose of the indictment is to inform the accused of the nature of the offense charged so as to enable him to make an adequate defense as well as to avail himself of his conviction or acquittal to avoid the threat of double jeopardy. *State v. Morano*, 134 *N. J. L.* 295 (*E. & A.* 1946). The indictment also serves to inform the court of the facts alleged so that it may decide whether they are sufficient in law to support a conviction if one should be obtained, *U. S. v. Hess*, 124 *U. S.* 483, 8 *S. Ct.* 571, 31 *L. Ed.* 516 (1888). The indictment must be examined in the light of the constitutional provisions, the rules of court and the decisions."

And at *page* 181:

"The power to quash an indictment rests in the sound discretion of the trial judge, but this discretion should not be exercised 'except on the plainest ground,' *State v. Ellenstein*, 121 *N. J. L.* 304, 325 (*Sup. Ct.* 1938), or on 'the clearest and plainest ground,' as it was put in *State v. Davidson*, 116 *N. J. L.* 325, 328 (*Sup. Ct.* 1936), or unless the indictment is 'palpably defective,' *State v. Russo*, 6 *N. J. Super.* 250, 254 (*App. Div.* 1950), especially where the statute of limitations has run, *State v. Tilton*, 104 *N. J. L.* 268, 274 (*Sup. Ct.* 1928), *State v. Acton*, 9 *N. J. Misc.* 55, 58 (*Sup. Ct.* 1931). Our courts have repeatedly held that 'discretion ought not to be exercised in a case like this where injustice may be done thereby to the state and where the refusal to exercise it deprives the defendants of no substantial rights,' *State v. Lehigh Valley Railroad Company*, 90 *N. J. L.* 372, 376 (*Sup. Ct.* 1917)."

*State v. Daly*, 3 *N. J. Super.* 247 (*App. Div.* 1949); *Linden Park Blood Horse Association v. State*, 55 *N. J. L.* 557 (*E. & A.* 1893); *State v. Lefante*, 12 *N. J.* 505, at *pages* 509–510 (1953):

"The sufficiency of an indictment is to be determined in the light of the pertinent rules of court and judicial decisions. Rule 2:4–11, dealing with the nature and contents of an indictment, reads, so far as it is pertinent here, as follows: 'The indictment or accusation shall be a written statement of the essential facts constituting the offense charged. * * * Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means. An indictment or accusation or any count thereof charging the violation of a statute or statutes shall state for each count the official or customary citation of the statute or statutes which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or accusation or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.'

\* \* \* \* \* \* \* \*

* * * these rules bespeak the determination of the court to put an end to the determination of criminal proceedings on the technicalities that so often characterize criminal proceedings at common law and that tended to bring the law and the administration of justice into disrepute."

*State on Complaint of Bruneel v. Bruneel,* 14 *N. J.* 53, at *page* 60 (1953):

" 'The primary purpose of an indictment is to inform the defendant of the nature of the offense charged against him, so that he may adequately prepare his defense, while a second function is to serve as a shield from another indictment for the same offense.' *State v. Lefante,* 12 *N. J.* 505, 509 (1953)."

Turning now to a conspiracy indictment, the crime here involved, 11 *Am. Jur., Conspiracy,* 562–63, states:

"Sec. 29. *Manner and Sufficiency of Charging Offense.* * * * The unlawful agreement must be set out. The unlawful purpose *or* the unlawful means to obtain a lawful purpose must be clearly stated. An imperfect averment of the facts constituting the description of the offense is not aided by introductory matter of the indictment, the qualifying epithets attached to the facts, or the alleged injurious consequences of such facts. It is, however, neither necessary nor proper to set forth the evidence by which the conspiracy is to be proved or to negative possible theories of defense." (Emphasis supplied)

A criminal conspiracy, then, is an agreement "to do an unlawful act, or to do a lawful act by unlawful means." *State v. Carbone,* 10 *N. J.* 329, 336 (1952). Justice Heher, speaking for our Supreme Court in that case, said at *page* 337:

"It is not requisite, in order to constitute a conspiracy at common law, that the acts agreed to be done be such as would be criminal if done; it is enough if the acts agreed to be done, although not criminal, be wrongful, *i. e., amount to a civil wrong.*" (Emphasis added)

In *State v. Herbert,* 92 *N. J. L.* 341 (*Sup. Ct.* 1918), the court, after distinguishing between two types of conspiracy, *i. e.,* agreement to commit a crime and divide proceeds and agreement to do a lawful act by unlawful means or means injurious to the public, states, at *page* 355:

"The fact that pleader charges that the combination was also 'to pervert and obstruct the due administration of said laws of this state relating to husband and wife, by conniving and seeking to

entrap Charles A. Knittel into an endeavor to commit adultery,' &c., adds no legal force to the indictment. The words 'or to commit any act for the perversion or obstruction of justice or the due administration of the laws,' found in section 37 of the Crimes act (*Comp. Stat.*, *p.* 1757), are descriptive of the character of the act necessary to be committed, in order to make such act indictable. It would not be a valid indictment which charged in the language just quoted without setting forth the illegal act complained of. What the pleader has done, in the present case, is to set out in the indictment the results flowing from the criminal means used to accomplish the object of the agreement—that is, the divorce."

This indictment does set forth the illegal act, namely, the agreement in advance of bidding, and the agreement is alleged to be "corrupt," a word defined in *State v. Western Union Telegraph Co.*, 13 *N. J. Super.* 172, 204 (*County Court* 1951), affirmed 12 *N. J.* 468 (1953). See also *Wood v. State*, 47 *N. J. L.* 461 (*Sup. Ct.* 1885).

The statute under consideration in the *Herbert* case was section 37 of the Crimes Act, *Comp. Stat. p.* 1757, the source of *N. J. S.* 2A:98–1.

But the defendants lay great emphasis upon the statutory language in *N. J. S.* 2A:98–1(*h*), "to commit *any act* for the perversion or obstruction of justice or the due administration of the law," it being their contention that since the statute allegedly perverted or obstructed, *N. J. S. A.* 58:14–22, lays duties only upon "commissioners" and none upon "non commissioners," then "non commissioners acting alone cannot conspire to violate the statute."

It is not necessary to this indictment that the defendants have any official duties under the bidding statute here in question. In *State v. Kollarik*, 22 *N. J.* 558 (1956), and in other cases such as *State v. Ellenstein*, 121 *N. J. L.* 304 (*Sup. Ct.* 1938), municipal officials having duties to perform were co-defendants. But in *State v. Shipley*, 10 *N. J. Super.* 245 (*App. Div.* 1950), none of the defendants indicted for conspiracy to pervert and obstruct the administration of certain election laws is indicated as being a public official. The indictment charged that the defendants removed regis-

tration and record of voting forms from the clerk's office, had them signed at times and places other than during office hours in the clerk's office, and then returned them. It appears from the opinion that neither the city clerk nor any of his functionaries were charged with violating their statutory duty; they did not improperly register ineligible voters. Nevertheless, the court held that the indictment was a proper one.

The due administration of the statute here in question can be obstructed by bidders having no official duty to perform.

Chief Justice Vanderbilt, in *Driscoll v. Burlington-Bristol Bridge Co.*, 8 *N. J.* 433, at *pages* 478, 479 (1952) said:

"The citizen is not without obligation to his government and to its officers. Just as a public officer owes a fiduciary duty to the public, so every member of the public owes a correlative duty to the officer and the government he represents. This responsibility, unfortunately too infrequently lived up to, is to deal fairly and frankly with public officials and to refrain from exerting improper pressures or prostituting personal influence or prestige. We need not dwell on the dangers inherent in ignoring this obligation of the citizen. Suffice it here to quote from the opinion of the United States Supreme Court in *Trist (Burke) v. Child, supra*, 21 *Wall.* 441, 88 *U. S.* 441, 450, 22 *L. Ed.* 623, 625 (1875) :

'The foundation of a republic is the virtue of its citizens. They are at once sovereigns and subjects. As the foundation is undermined, the structure is weakened. When it is destroyed the fabric must fall. Such is the voice of universal history. * * * The theory of our government is, that all public stations are trusts, and that those clothed with them are to be animated in the discharge of their duties solely by considerations of right, justice and the public good. They are never to descend to a lower plane. But there is a correlative duty resting upon the citizen. In his intercourse with those in authority, whether executive or legislative, touching the performance of their functions, he is bound to exhibit truth, frankness and integrity. Any departure from the line of rectitude in such cases is not only bad in morals but involves a public wrong.' "

The obvious policy of *N. J. S. A.* 58:14–22 is to promote bidding on P.V.S.C. jobs and to award the contract to the lowest responsible bidders. It is sufficient that the goal of the conspiracy should be the frustration of the public

policy or purposes of the act and the prevention of its accomplishing the objective for which it was enacted.

Burdick, in his volume on the *Law of Crimes, sec.* 268 (1946), puts it this way:

"Offenses affecting the administration of law include not only malfeasance and nonfeasance by officials in connection with the administration of their duties enjoined by law, but also offenses committed by any person in hindering, obstructing, or preventing officials in the performance of their duties." See also *Lorenson v. Superior Court,* 35 *Cal.* 2d 49, 216 *P.* 2d 859 (*Sup. Ct.* 1950) (dictum).

As Justice Case said in the *Ellenstein* opinion:

"A pertinent rule stated at least as early as *State v. Norton,* 23 *N. J. L.* 33, 44, and restated as recently as *State v. Continental Purchasing Co., Inc.,* 119 *N. J. L.* 257; affirmed 121 *N. J. L.* 76, is that all such acts as have the necessary tendency to prejudice the public or to injure or oppress individuals by unjustly subjecting them to the power of the conspirators are sufficiently tainted with the quality of unlawfulness to satisfy the requirements as to conspiracy." *State v. Ellenstein,* 121 *N. J. L.* 304, 314 (*Sup. Ct.* 1938). See also *State v. Shipley,* 10 *N. J. Super.* 245, 252 (*App. Div.* 1950).

The following civil cases also lend support to the principle that agreements such as are alleged here violate public policy. *Gulick v. Ward,* 10 *N. J. L.* 87 (*Sup. Ct.* 1828); *Brooks v. Cooper,* 50 *N. J. Eq.* 761 (*E. & A.* 1893); *McMullen v. Hoffman,* 174 *U. S.* 639, 19 *S. Ct.* 839, 43 *L. Ed.* 1117 (1898).

The objection that the indictment charges a conspiracy generally to pervert and obstruct the due administration of *N. J. S. A.* 58:14–22, rather than "some act" to pervert and obstruct its due administration is not well taken. The specific act alleged is the corrupt agreement in advance of the bidding. This indictment properly charges a conspiracy to obstruct the due administration of the laws and the means by which the defendants undertook to do so.

The second count of the indictment charges a conspiracy to obtain money by false pretenses and asserts the false pretenses to be that the bids submitted by Brewster

and Terminal "were competitive bids, knowing such bids were not in fact competitive bids, but were the result of Joseph La Fera, Sr., Wilbur W. Blauvelt, Anthony P. Miele and Phillip R. Salvatore agreeing in advance of the submission of such bids which company or companies represented by them would bid on such contract, and in what amounts."

The State's particulars concede that the alleged false pretense, i. e., the pretense that the bids were competitive, was made "by handing in their bids."

Defendants urge several grounds for dismissing this count:

(1) The word "competitive" is indefinite, uncertain, unspecific and ambiguous.

(2) There is no allegation that any public bidding statute is applicable to the contract.

(3) The alleged false pretenses are not sufficient to induce another to part with his money.

The term "competitive bidding" in New Jersey has a well-defined meaning.

Our Supreme Court, in an opinion by Justice Francis discussing statutory practice for the letting of contracts for the performance of public work, said:

"It is an almost universally recognized practice, *McQuillin, Municipal Corporations*, § 29.28 (1950), and one which is rooted deep in sound principles of public policy. *Waszen v. City of Atlantic City*, 1 *N. J.* 272, 283 (1949) ; *Tice v. Long Branch*, 98 *N. J. L.* 214 (*E. & A.* 1922). The purpose is to secure competition and to guard against favoritism, improvidence, extravagance and corruption. Statutes directed toward these ends are for the benefit of the taxpayers and not the bidders; they should be construed with sole reference to the public good; and they should be rigidly adhered to by the courts. *Weinacht v. Board of Chosen Freeholders of County of Bergen*, 3 *N. J.* 330, 333 (1949) ; *Tice v. Long Branch, supra; McQuillin, supra* § 29.29. *Hillside Township, Union County v. Sternin*, 25 *N. J.* 317, 322 (1957)."

And in *Weinacht v. Board of Chosen Freeholders of County of Bergen*, 3 *N. J.* 330, 333 (1949), Justice Wachenfeld said:

"The primary objective of the statutes requiring advertisement for public work is to encourage competition. These measures were

enacted for the benefit of the public and the object of the act is not only apparent from its phraseology but has been so construed by our courts many times." (Citing cases)

In the indictment, count two, reference is made to Contract No. 355, Newark Bay Sedimentation Basin Improvement and Sludge Handling Facilities; the overt acts alleged identify this as a contract within the purview of *N. J. S. A.* 58 :14–22 and, therefore, one on which there must be public bidding; and that overt acts may be used to supply jurisdictional facts will be covered hereafter in this opinion.

The State's answer to the third objection above is complete. The alleged conspiratorial agreement would reduce competition; reduced competition would have a natural tendency to raise the price to the public body. The excess funds would be obtained from the public body by the submission of false bids, *i. e.,* bids purporting to be competitive. Again, the agreement among the conspirators is alleged to be a corrupt one.

■ Further, the substantive crime being dealt with here is the alleged conspiracy, and it is a different offense from the crime that is the object of the conspiracy. *State v. Western Union Telegraph Co.,* 13 *N. J. Super.* 172 (*County Ct.* 1951), affirmed 12 *N. J.* 468 (1953); *State v. Carbone,* 10 *N. J.* 329 (1952). The State need not prove the substantive offense of obtaining money under false pretenses. Therefore, I conclude that count two properly charges a conspiracy to obtain money by false pretenses.

■ The indictment fails to make the usual allegation that the defendants "did within the jurisdiction of this court," *etc.,* nor are jurisdictional facts set forth in the actual conspiracy charge. Is then the indictment fatally defective? The State must have jurisdiction in order to try the defendants for the crime charged and failure to allege jurisdiction is ordinarily fatal. See 27 *Am. Jur., Indictments and Information,* § 64; *Halsey v. State,* 4 *N. J. L.* 324 (*Sup. Ct.* 1816).

■ It may be conceded for the purpose of determining this issue that the rule of criminal pleading is that the charging part of the indictment must alone set forth the conspiracy and that its disclosure cannot be aided by the averment of the overt acts or, as was stated in *State v. Lombardo*, 20 *N. J. Super.* 317, 324 (*App. Div.* 1952):

"Overt acts in a conspiracy indictment are not in themselves offenses charged but rather events incidental to the alleged conspiracy."

Finally,

"But the gist of the offense of conspiracy consists in the unlawful confederation, and not in the overt acts designed to carry it into effect." *State v. Vanderhave*, 47 *N. J. Super.* 483, 486–487 (*App. Div.* 1957), affirmed *sub nom State v. Giardina*, 27 *N. J.* 313 (1958).

See also *State v. Western Union Telegraph Co.*, 13 *N. J. Super.* 172, 202–203 (*County Ct.* 1951), affirmed 12 *N. J.* 468 (1953); *Pettibone v. United States*, 148 *U. S.* 197, 202–203, 13 *S. Ct.* 542, 37 *L. Ed.* 419 (1893); *Pope v. United States*, 289 *Fed.* 312 (3 *Cir.*), *certiorari* denied 263 *U. S.* 703, 44 *S. Ct.* 33, 68 *L. Ed.* 515 (1923).

The argument of the defendants is that this court may not consider the overt acts in determining jurisdiction. Among the overt acts alleged in each of the two counts are the submission of bids to the "Passaic Valley Sewerage Commissioners, at the Commissioners' offices, located in the City of Newark in the County of Essex aforesaid." It is further alleged that one of the defendants "met with a member of the firm of Bogert and Childs, Consulting Engineers of the Passaic Valley Sewerage Commissioners, and with the Passaic Valley Sewerage Commissioners at the Commissioners' offices located in the City of Newark in the County of Essex."

■ The case of *Pope v. United States*, 289 *Fed.* 312 (3 *Cir.* 1923), cited by the defendants for other purposes, is authority for the proposition that reference may be made to

overt acts which do indicate jurisdiction although the *charging part* of the conspiracy count is silent with respect thereto. The court in that case said:

"Being a matter of jurisdiction and not a matter affecting notification to the accused, this rule is distinguishable from the rule of criminal pleading which prescribes that the charging part of a count must alone set forth the conspiracy and that its disclosure cannot be aided by the averment of overt acts." 289 *Fed.*, at *page* 314.

This distinction appears to be a valid one, in keeping with the notion that "an indictment is sufficient if it informs the accused of the nature of the offense charged so as to enable him to make an adequate defense as well as to avail himself of his conviction or acquittal to avoid the threat of double jeopardy." *State v. Low*, 18 *N. J.* 179, 185 (1955). See also *State v. Williamson*, 54 *N. J. Super.* 170, 186–187 (*App. Div.*), affirmed 31 *N. J.* 16 (1959).

As the United States Supreme Court said in *Hyde v. United States*, 225 *U. S.* 347, 363, 32 *S. Ct.* 793, 800, 56 *L. Ed.* 1114 (1911):

"We realize the strength of the apprehension that to extend the jurisdiction of conspiracy by overt acts may give to the Government a power which may be abused, and we do not wish to put out of view such possibility. But there are counter considerations. It is not an oppression in the law to accept the place where an unlawful purpose is attempted to be executed as the place of its punishment, and rather conspirators be taken from their homes than the victims and witnesses of the conspiracy be taken from theirs. We must not, in too great a solicitude for the criminal, give him a kind of immunity from punishment because of the difficulty in convicting him—indeed, of even detecting him. And this may result, if the rule contended for be adopted. Let him meet with his fellows in secret and he will try to do so; let the place be concealed, as it can be, and he and they may execute their crime in every state in the Union and defeat punishment in all."

See also *Brown v. Elliott*, 225 *U. S.* 392, 401, 32 *S. Ct.* 812, 56 *L. Ed.* 1136 (1911), a case in which the place where the conspiracy was formed was unknown to the grand jurors. The court, citing *Hyde,* said:

"As the place of the overt act may be the place of jurisdiction, it follows that the exact place where the conspiracy was formed need not be alleged."

Of course, those cases, offenses against the United States are concerned with venue, not jurisdiction. The defendants urge that the law in New Jersey on jurisdiction in conspiracy cases is set forth in *Noyes v. State*, 41 *N. J. L.* 418 (*Sup. Ct.* 1879), affirmed 43 *N. J. L.* 672 (*E. & A.* 1881). Chief Justice Beasley, speaking for the Supreme Court upon the State's argument in that case that in whatever place one of the conspirators does an act in furtherance of the common design, the illegal agreement is thereby renewed as to all, and consequently the locality of the crime is changed as to all, commented as follows:

"* * * no authority has been cited in support of this proposition, at least no authority that is apposite. The cases referred to go no further than to hold that this legal intendment, that the act of one confederate is the act of all, will arise where such act is done within the same jurisdiction in which the conspiracy occurred. The principle is one relating to mere venue, and not to international jurisdiction." 41 *N. J. L.*, at *page* 422.

But the court, having found on other grounds that the conspiracy was renewed in New Jersey, said:

"The inclination of my mind is opposed to all extensions of such power beyond the field which is already clearly defined. But *this court is not called on to settle this question at this time*, for in the present case the jurisdiction that was assumed is to be vindicated on legal principles that are deemed unquestionable." 41 *N. J. L.*, at *page* 422 (emphasis added).

Further, counsel for defendant in this case checked the state of case in *Noyes* and found that jurisdiction was asserted in the indictment.

██ Since the place of the alleged conspiracy is not stated in the indictment and may in fact be outside the State, does the allegation of an overt act within the territorial jurisdiction of the court suffice to show that the courts of this State have jurisdiction to punish the alleged

conspirators? This question has not been decided in New Jersey. The conclusion of this court is that the question must be answered in the affirmative.

A number of cases support the State's position here and in *Noyes*. In *State v. Hicks*, 233 *N. C.* 511, 64 *S. E.* 2d 871, *certiorari* denied 342 *U. S.* 831, 72 *S. Ct.* 56, 96 *L. Ed.* 629 (1951), the North Carolina Supreme Court held that:

"The defendant was not entitled to have the action nonsuited on the theory that the crime alleged was committed outside the State. While the conspiracy was formed in South Carolina, one of the conspirators, namely, Chesley Morgan Lovell, committed overt acts in Mecklenburg County, North Carolina, in furtherance of the common design. As a consequence, the Superior Court of Mecklenburg County had jurisdiction to try the action. [Citations omitted] In legal contemplation, a criminal conspiracy is continued and renewed as to all its members wherever and whenever any member of the conspiracy acts in furtherance of the common design." 64 *S. E.* 2d, at *pages* 875–876.

In *State v. McAdams*, 167 *S. C.* 405, 166 *S. E.* 405, 406 (1932) a case involving a Georgia conspiracy in furtherance of which certain overt acts were committed in South Carolina, the South Carolina Supreme Court quoting from 5 *R. C. L.* 1076 held that:

"* * * if an overt act in pursuance of the conspiracy is committed in a jurisdiction other than that where the combination was made, the conspirators may be prosecuted in the place where the overt act was committed."

See also *State v. Vetrano*, 121 *Me.* 368, 117 *Atl.* 460 (1922), where in a case involving a New Jersey resident the Supreme Judicial Court of Maine reached a similar conclusion on the authority of *Strassheim v. Daily*, 221 *U. S.* 280, 31 *S. Ct.* 558, 55 *L. Ed.* 735 (1910), in which it was held:

"Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." 221 *U. S.*, at *page* 285, 31 *S. Ct.*, at *page* 560.

To reach any other conclusion would mean that conspirators either meeting in secret or in another State could execute a crime by committing overt acts within New Jersey detrimental to the interest of the people of New Jersey and go unpunished on the ground that New Jersey had no jurisdiction to try them.

The overt acts may by the same reasoning be used to substantiate the missing jurisdictional fact in the charging part of each count of the indictment, namely, that Contract 355 involves more than $2,000 and thus required advertisement by the commissioners and competitive bidding. Unless the contract were in excess of $2,000, the bidding statute *N. J. S. A.* 58:14–22 would not be applicable, no advertisement would be necessary, and the commissioners could have awarded the contract to any bidder. *Trenton v. Shaw,* 49 *N. J. L.* 638 (*E. & A.* 1887); *Murray v. City of Bayonne,* 73 *N. J. L.* 313 (*Sup. Ct.* 1906); *Delker v. Board of Chosen Freeholders of Atlantic County,* 90 *N. J. L.* 473 (*E. & A.* 1917); *Heston v. Atlantic City,* 93 *N. J. L.* 317 (*Sup. Ct.* 1919).

The defendants urge upon the court that even if the indictment is sufficient on its face, it should nevertheless be dismissed. This on the following basis quoted from the defendants' brief:

"The particulars furnished by the prosecution, setting forth all the facts and circumstances from which it will be alleged the existence of the conspiracies charged in counts I and II can be inferred, make it evident that the State will be unable to prove a *prima facie* case. This obvious dearth of evidence justifies the Court in dismissing the indictment now, rather than compelling defendants and the public to suffer the expense and burden of a long protracted trial."

Defendants cite three federal cases in support of this proposition: *United States v. Adams Express Co.,* 119 *Fed.* 240 (*D. C. S. D. Iowa* 1902); *United States v. McKay,* 45 *F. Supp.* 1001 (*D. C. E. D. Mich.* 1942); and *United States v. Philippe,* 173 *F. Supp.* 582 (*D. C. S. D. N. Y.* 1959).

In *United States v. Adams Express Co.*, 119 *Fed.* 240 (*D. C. S. D. Iowa* 1902), the District judge stated at *page* 241:

"*Whether a bill of particulars is a matter of record or part of the indictment, and whether, with the indictment, it is subject to demurrer, are all probably to be answered in the negative.* Whether such a bill shall be ordered seems to be discretionary with the court. It can be amended; while an indictment, of course, cannot be amended. An indictment often is in such general terms, and yet sufficient in law, as to largely fail to apprise the defendant of what he must meet on the trial. And the office of a bill of particulars is to advise the court, but more particularly the defendant, of what facts, more or less in detail, he will be required to meet. And the court will limit the government in its evidence to those facts set forth in the bill of particulars. In this case it was apparent from the general terms of the indictment, and the defendant being a corporation or joint-stock association, and from the crime charged, although the indictment was sufficient in law, that a bill of particulars ought to be filed; and, the demurrer going to both the indictment and the bill of particulars, and being so treated by counsel on both sides, the court will so regard it; because, if the facts so recited do not constitute a crime, there is no good purpose served in impaneling a jury and calling many witnesses from a distance, and then being compelled to direct a verdict for the defendant. *Not because the law exacts it, but for the reasons stated, and none other, I will consider the case as if the indictment contained a recital of all the facts set forth in the bill of particulars.*" (Emphasis added)

Then, in the case of *United States v. McKay*, 45 *F. Supp.* 1001 (*D. C. E. D. Mich.* 1942), the court says at *pages* 1004–1005:

"The Government contends, however, that the bill of particulars forms no part of the indictment and can not be considered by the Court in ruling upon the demurrer heretofore filed to the indictment itself. This position is technically sound. *United States v. Comyns*, 248 *U. S.* 349, 39 *S. Ct.* 98, 63 *L. Ed.* 287; *United States v. Norris*, 281 *U. S.* 619, 50 *S. Ct.* 424, 74 *L. Ed.* 1076; *United States v. Fawcett*, 3 *Cir.*, 115 *F.* 2d 764, 766, 132 *A. L. R.* 404; *United States v. Rintelen*, *D. C.*, 233 *F.* 793, 799; *United States v. Reisley*, *D. C.*, 32 *F. Supp.* 432, 434. But as a practical matter such a rule under circumstances as they exist in this case serves no useful purpose. On the contrary, it impedes and delays the administration of justice. Because if the uncontroverted facts upon which the Government relies do not constitute the crime charged by the indictment there is

no good purpose served in causing both the Government and defendant to make extensive and expensive trial preparations, to impanel a jury, to spend several weeks in hearing many witnesses, some no doubt from distant points, and then being compelled to direct a verdict for the defendant because the facts proven, and already conceded by the defendant to be the facts, do not constitute the offense charged. See *United States v. Adams Express Co., supra*, 119 *F.* 240, 241. Accordingly, as a practical matter it seems advisable for the Court to rule on the demurrer to the indictment without considering the bill of particulars, and in case that ruling should be erroneous, considering the language of the indictment instead of the actual facts, to also indicate its present views based on the facts as set out in the bill of particulars."

In summary, these cases stand for the proposition that the bill of particulars is not to be considered in ruling upon the sufficiency of an indictment, but that in these two instances a District Court elected to treat an indictment *as if* it alleged the facts set forth in the bill of particulars. Finally, in *United States v. Philippe,* 173 *F. Supp.* 582 (*D. C. S. D. N. Y.* 1959), Judge Murphy says at *pages* 583–584:

"At the threshold we dispose of the government's assertion that we may not consider such admissions on this motion because of the rule that a bill of particulars, or in this case admissions, may not be incorporated with an indictment in ruling upon its sufficiency. Under appropriate circumstances which we deem to exist here such a rule 'serves no useful purpose' but on the contrary 'impedes and delays the administration of justice.' *United States v. McKay, D. C. E. D. Mich.* 1942, 45 *F. Supp.* 1001, 1004."

This case, dealing with admissions, adds little to the weight of the foregoing cases. We are thus confronted with a suggestion that an admittedly erroneous view of the federal law should become authority in New Jersey for dismissing an otherwise valid indictment.

 Of course, this court will not follow such a practice. The grand jury system is firmly implanted in our law and a grand jury has handed up an indictment against these defendants. Its work may not be set at naught except in accordance with our established practice. If the State

believes it has a weak case, it may move under *R. R.* 3 :11-3 (*a*) to dismiss. Further, the prosecutor's (and Attorney General's) duty in this case is set forth in that portion of *Canon 5* of the *Canons of Professional Ethics:* "The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done."

It is urged—and even conceded—that the State's case will consist largely of circumstantial evidence. Therefore, say the defendants, the indictment must be dismissed under our circumstantial evidence rule set forth in *State v. Rogers,* 19 *N. J.* 218, 233–234 (1955) ; *State v. Bulna,* 46 *N. J. Super.* 313, 317 (*App. Div.* 1957), affirmed 27 *N. J.* 93 (1958) ; *State v. Dancyger,* 51 *N. J. Super.* 150, 158 (*App. Div.* 1958), reversed 29 *N. J.* 76 (1959) and in *State v. Donohue,* 2 *N. J.* 381 (1949), wherein, at *page* 390, Justice Wachenfeld sets forth the rule as follows:

> "In order to justify a conviction on such (circumstantial) evidence, all of the circumstances not only must concur to indicate a defendant's guilt but they must also be inconsistent with any other rational conclusion. It is not enough that they coincide to render probable the hypothesis advanced by the prosecution; they must also exclude beyond a reasonable doubt every other hypothesis except that. of guilt. *Jackson v. Delaware, L. & W. R. Co.,* 111 *N. J. L.* 487 (*E. & A.* 1933). Where the essential facts are proved, and where they cannot be rationally explained on any theory other than that the defendant is guilty of the crime charged, such circumstantial evidence will be considered as convincing as evidence of a direct and positive character."

But said Chief Justice Case in *State v. Boyd,* 137 *N. J. L.* 23, 25–26 (*Sup. Ct.* 1948), affirmed on opinion below 137 *N. J. L.* 615 (*E. & A.* 1948):

> "A finding of guilt in a criminal case may rest upon indirect or circumstantial evidence if that evidence be in quality sufficient to generate in the jurors' minds a belief and conviction of guilt beyond a reasonable doubt."

And the law in New Jersey undoubtedly is that the circumstantial evidence rule "is one for application by

the jury, under proper instructions, and no sound conclusion can be drawn from these authorities that the court must acquit under that formula if its own view, favorable to the defendant, as to the effect of the proofs in excluding every reasonable hypothesis of innocence, differs from that which a jury might debatably entertain." *State v. Bulna,* 46 *N. J. Super.* 313, 318 (*App. Div.* 1957), affirmed 27 *N. J.* 93 (1958).

The problem presented by splitting the allegations here into two counts is difficult of solution. The State admits that there is only one conspiracy, not two. Obviously, the State intended to allege two objects of a single conspiracy, namely, to obtain money by false pretenses and to obstruct the due administration of the laws of New Jersey. This conspiracy should have been set forth in one count. See *State v. Profita,* 114 *N. J. L.* 334, 338 (*E. & A.* 1935).

"The crime of conspiracy is not to be confounded with the objects of the conspiracy. A combination to commit several crimes is a single offense. [Citation omitted] We find that the indictment clearly charges an offense, a single offense, namely, the crime of conspiracy, and that therefore one count was adequate and the count is not duplicitous * * *."

See also *Noyes v. State,* 41 *N. J. L.* 418, 421 (*Sup. Ct.* 1879), affirmed 43 *N. J. L.* 672 (*E. & A.* 1881) and *State v. Spence,* 36 *N. J. Super.* 314 (*App. Div.* 1955), cert. denied 19 *N. J.* 441 (1955).

There can be no justification for splitting this one conspiracy, a single offense and single unlawful act, into two counts. See *State v. Pennsylvania R. R. Co.,* 16 *N. J. Super.* 360 (*App. Div.* 1951), affirmed 9 *N. J.* 194 (1952). *R. R.* 3:4–7 allows only the joinder of separate offenses, not the splitting of one offense.

It would be manifestly unfair to the defendants to permit such a practice.

Justice Wachenfeld, speaking for the court in *State v. Pennsylvania R. R. Co.,* 9 *N. J.,* at *pages* 197, 198, after

514

quoting the following from *State v. Labato*, 7 *N. J.* 137, 143 (1951),

"It is an ancient principle of the common law that one may not be twice put in jeopardy for the same offense. This is one of the limitations upon arbitrary power confirmed by King John's Magna Charta of 1215, in the provision (*c.* 29) ensuring the essentials of individual right and justice and the ancient liberties of the free man against interference 'but by lawful judgment of his peers, or by the law of the land.' Immunity from repeated jeopardy was one of the cherished basic liberties of the early common law comprehended in this guaranty of the great charter. *State v. DiGiosia*, 3 *N. J.* 413 (1950). The constitutional and common-law protection is not only against the peril of a second punishment, but also against a second prosecution and trial for the same offense."

said, at *page* 197 of 9 *N. J.*:

"The principle so enunciated is strongly entrenched in the very foundation of our legal structure both by the Constitution and the common law. The complete identity of the evidence is covered by the stipulation admitting 'that the same facts would be put in evidence to prove each offense.' It is apparent, we think, that if the 84 indictments were to be moved and tried together, the defendant would be deprived of its right to enter a plea of *autrefois acquit* or *convict*, whichever was apropos."

It is true that amendments to split counts have been permitted. In *State v. Spence*, 36 *N. J. Super.* 314 (*App. Div.* 1955), where the conspiracy indictment was in one count, the Appellate Court concluded, at *page* 320, that "it is not palpably duplicitous and that the application to amend or delete from it the repetitious verbiage that has given it that complexion should be granted." The indictment in *State v. Howley*, 30 *N. J. Super.* 507 (*App. Div.* 1954), was in two counts charging the defendant with the felonious slaying of two persons, naming one in the first count and the other in the second count. Both persons having been in an auto which was struck by a train because of the failure of defendant, a·gate tender, to lower the gates at a crossing, the court ordered the indictment amended so

as to include in a single count the allegations set forth in the two counts.

In passing, the court has noted the defendants' argument that in *Howley* there was a "lack of objection upon the defendant's part" to the amendment. The failure of a defendant to object cannot give a court power it does not have.

The difficulty in the present case, however, is this: In the second count, Richard N. Dinallo is named as a conspirator but not as one of those "agreeing in advance of the submission of such bid which company or companies represented by them would bid on such contract, and in what amount." In the first count, the clear allegation is that all five alleged conspirators agreed "in advance of bidding on said contract which companies represented by them would bid on said contract, and in what amount."

The court cannot permit an amendment which would add Mr. Dinallo's name to those agreeing in advance for the purpose of obtaining money, *etc.,* as alleged in count two. To do so would be highly prejudicial to his rights since it would include him as one of the actors in the alleged unlawful means by which the conspiracy was to be attained, *i. e.,* obtaining money under false pretenses. It would include Mr. Dinallo, when the grand jury did not. That would be a deprivation of his constitutional rights under *Art.* I, *par.* 8. The court cannot conceive how the indictment can, without jeopardizing Mr. Dinallo's rights, be amended. The court, therefore, will order the State to elect on which count of the indictment it will proceed. The other count will be severed, and once the defendants are put in actual jeopardy, will be dismissed.

An order will be submitted in conformance with this opinion.